No. 24-7206

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

MICHAEL C. STERNBERG,

*Plaintiff-Appellant*,

v.

SHELLEY WARNECK, et al.

*Defendants-Appellees*

On Appeal from the United States District Court of Nevada
No. 2:23-cv-01466-APG-EJY
Hon. Andrew P. Gordon

_____

## APPELLANT'S OPENING BRIEF

_____

Michael C. Sternberg, Pro Se
8545 W Warm Springs Rd. Ste. A4 #256
Las Vegas, NV 89113
702.234.2539
sternberg_michael@yahoo.com

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.............................................................................iii

INTRODUCTION.......................................................................................1

JURISDICTIONAL STATEMENT........................................................3

ISSUES PRESENTED ...............................................................................4

STATEMENT OF THE CASE ...............................................................5

SUMMARY OF THE ARGUMENT ....................................................13

STANDARD OF REVIEW ....................................................................14

ARGUMENT .............................................................................................15

NINTH CIRCUIT CAMERA POLICY ...............................................23

JUDICIAL AND PROFESSIONAL MISCONDUCT ..........................23

CONCLUSION .........................................................................................24

STATEMENT OF RELATED CASES...................................................25

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell v. City of Boise*,
    709 F.3d 890 (2013)……………………………………………14

Benavidez v. County of San Diego,
    993 F.3d 1134, 1142 (2021)…………………………………………21

*California Chamber of Commerce v. Council for Education and...*,
    29 F.4th 468 (2022)……………………………………………15

*District of Columbia Court of Appeals v. Feldman*,
    460 U.S. 462 (1983)……………………………………………13

Doe & Associates Law Offices v. Napolitano,
    252 F.3d 1026 (2001)…………………………………………..21

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*,
    544 U.S. 280 (2005)……………………………………….. 2,15,18,21

*Hardwick v. County of Orange*,
    844 F.3d 1112 (2017)…………………………………………..19

*In re Lake*,
    202 B.R. 751 (1996)……………………………………………17

*In re Marriage of Kreiss*,
    224 Cal.App.3d 1033 (1990)………………………………………..15

*In re Reyes*,
    No. BAP EC-18-1229-BSL,
    2019 WL 1759749,
    (B.A.P. 9th Cir. Apr. 19, 2019)………………………………………17

*Kougasian v. TMSL, Inc.*,
    359 F.3d 1136 (2004)…………………………………………..19

*Maldonado v. Harris*,
　　370 F.3d 945 (2004)……………………………………………..20

*Mothershed v. Justices of Supreme Court*,
　　410 F.3d 602 (2005)……………………………………………..18

*Nagel v. P & M Distributors, Inc.*,
　　273 Cal.App.2d 176 (1969)……………………………………..15

*Rooker v. Fidelity Trust Co.*,
　　263 U.S. 413 (1923)……………………………………13,14,15

*World-Wide Volkswagen Corp. v. Woodson*,
　　444 U.S. 286 (1980)……………………………………………..17


**Statutes**

California Code of Civil Procedure 473(d)………………………………16

California Family Code 3427……………………………………………9

Uniform Child Custody Jurisdiction & Enforcement Act
　　California Family Code Division 8, Part 3,
　　Nevada Revised Statute 125A.365…………………………………7,9

28 U.S.C. § 1257…………………………………………………..13

28 U.S.C. § 1292(a)(1)……………………………………..……..3

28 U.S.C. § 1331…………………………………………………3

28 U.S.C. § 1343…………………………………………………3

28 U.S.C. § 1367…………………………………………………3,16

28 U.S.C. § 2201…………………………………………....4, 17

42 U.S.C. § 1983…………………………………………1,4,13,17

**Rules**

California Code of Judicial Ethics……………………………………………8

California Rule of Court 5.113……………………………………...18

California Rule of Court 5.165………………………………………10

California Rules of Professional Conduct………………………..7, 8

FRAP 4(a)(1)(A)…………………………………………………3

FRCP 57……………………………………………………17

FRCP 60(b)……………………………………………4,16,17

Santa Clara County Local Family Rule of Court 5(A)(2)(b)………………10

**Other Authorities**

U.S. Const. amend. XIV, § 1…………………………… 1,4,16,17,18,19,21

U.S. Const. art. III……………………………………………4,14,16

# INTRODUCTION

This case calls on the Ninth Circuit to address the constitutional limitations on state court authority, specifically when orders are issued without notice or an opportunity to be heard, in violation of the Fourteenth Amendment's Due Process Clause. I challenge the district court's denial of my Motion for Preliminary Injunction and dismissal of other claims under the Rooker-Feldman doctrine. The district court's rulings shield state court orders that were not adjudications of substantive rights but instead procedural abuses that fundamentally deprived me of due process.

At issue is a secret ex parte jurisdictional order, in which California family judge Roberta Hayashi made findings of fact and conclusions of law in an order drafted and sent to her by California family lawyer Tristan Aeschleman. There were no noticed motions before Hayashi, and I had been served nothing. The court had no jurisdiction over me. Thereafter, in a sequence of secretive and unlawful acts by state officials, including more secret ex parte court orders, I have been deprived of parental rights and liberties for almost six years without a meaningful chance to contest the actions against me.

I filed a 42 U.S.C. § 1983 action in the District Court of Nevada after Nevada law enforcement falsely arrested me on a California warrant they knew had been obtained by fraud. California officials sought the warrant on the premise that I was in violation of secret family court orders built on top of the jurisdictional order at

1

issue. I moved the district court for a preliminary injunction barring Nevada law enforcement from maliciously abusing me again. The district court improperly raised the Rooker-Feldman doctrine sua sponte, denied my request, misconstrued my motion as a forbidden de facto appeal of a final state court judgment.

Rooker-Feldman applies narrowly to cases where plaintiffs seek federal review of final state court judgments. The U.S. Supreme Court has underscored the doctrine's limited scope. In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280 (2005), the Court clarified that Rooker-Feldman applies only to cases in which a losing party in state court seeks federal relief that would effectively reverse or void the state court's final judgment. But a basic premise of the doctrine is that the state court actually had jurisdiction - Hayashi's secret jurisdictional order is void on its face. An examination of the state court's own records demonstrates I was given no notice or opportunity to be heard. There was nothing even before her court. Furthermore, even if the order weren't void on its face, Rooker-Feldman is not triggered simply from parallel state and federal litigation, and it does not deprive the district court from jurisdiction to provide relief regarding a state court judgement obtained through extrinsic fraud. Rooker-Feldman also does not prohibit the district court from restraining third parties.

At its core, this case is about safeguarding the principle that no one shall be deprived of life, liberty, or property without due process of law. This Court's review is necessary to clarify that Rooker-Feldman cannot insulate state courts or

law enforcement from accountability when orders are issued without notice or a hearing, violating fundamental constitutional protections.

## JURISDICTIONAL STATEMENT

The U.S. District Court of Nevada has jurisdiction pursuant to 28 U.S.C. § 1331, § 1343, and § 1367. The complaint involves allegations of constitutional rights violations under color of state law.

The U.S. Ninth Circuit Court of Appeals has jurisdiction pursuant to 28 U.S.C. § 1292(a)(1). The appeal is for denial of a Motion for Preliminary Injunction. No motions related to the denial have been filed with the district court.

The order appealed from was entered on November 14, 2024. 1-ER-2-4.

The Notice of Appeal was filed on November 18, 2024. 3-ER-384.

The appeal is timely pursuant to FRAP 4(a)(1)(A).

## CONSTITUTIONAL, STATUTORY, & REGULATORY AUTHORITIES

All relevant constitutional, statutory, and regulatory authorities are set out in the Addendum attached to this brief.

## ISSUES PRESENTED

1. Whether the district court erred in holding that my "seeking to undo state court orders are barred by the Rooker-Feldman doctrine," when the orders are void on their face.

2. Whether the district court erred in characterizing my collateral attack as one under FRCP 60(b) and an "end run around Rooker-Feldman."

3. Whether Rooker-Feldman deprives the district court of original jurisdiction under Article III and the Fourteenth Amendment to the U.S. Constitution, 28 U.S.C. § 2201 and 42 U.S.C § 1983, to declare a state court order or judgment void, when that order or judgment is shown by the issuing court's own records to have been levied without notice or opportunity to be heard.

4. Whether Rooker-Feldman deprives the district court of original jurisdiction under Article III and the Fourteenth Amendment to the U.S. Constitution, and 42 U.S.C § 1983 to enjoin law enforcement from using a state civil court order as a pretext for initiating an arrest and a criminal prosecution, when law enforcement knows the order was issued without due process and/or by extrinsic fraud by a party.

5. Whether Rooker-Feldman deprives the district court of original jurisdiction under Article III and the Fourteenth Amendment to the U.S. Constitution, and 42 U.S.C § 1983 when it can be shown, that there are no appellate rights in a state judiciary, because the state court is holding a litigant's court file hostage.

6. Whether Rooker-Feldman bars a collateral attack under the district court's supplemental jurisdiction, where the district court has original jurisdiction on an issue distinct from the order or judgement being attacked, and where state law recognizes collateral attacks on void orders at any time.

## STATEMENT OF THE CASE

In July 2012, Warneck and I ended our intimate relationship, and with the help of a Licensed Marriage and Family Therapist, came to an agreement about me moving out of the family home in San Jose, CA. We also agreed to short-term custody arrangements for our two boys. The LMFT was available to us to further negotiate and resolve any disputes. Unfortunately, Warneck surreptitiously filed an action in the Santa Clara County, CA family court, which ended the amicable arrangements. We had one emergency hearing at my request, because Warneck violated our custody agreement. At that hearing, I stipulated that I was the father of our children, and to temporary joint legal custody. I did not stipulate to anything else. I signed paperwork reflecting my stipulation; however, we quickly changed paths and agreed to dismiss the case. In October 2012, we executed the first Request for Dismissal. Inexplicably, instead of our dismissal, a so-called stipulated judgment was entered, which I would not find out about until 2019. I did not stipulate to this judgment; it was not presented to me, and was not included in the paperwork I signed. 2-ER-279.

From October 2012 to January 2013, Warneck and I were frustrated by our attorneys' failure to confirm the dismissal. In January 2013, they finally advised us that the dismissal was lost, so we executed another Request for Dismissal.

From 2013 to 2019, Warneck and I co-parented as if the case was properly dismissed; I believed it was properly dismissed. In 2015, I moved back home to Las Vegas, and traveled back and forth to be with my boys. In 2018, Warneck and the boys moved to South Lake Tahoe, CA and I continued traveling back and forth.

Warneck got a DUI with the kids in the car in the summer of 2018. In August 2018, we agreed that the boys would move to Las Vegas, and that I would be the primary parent until she got out of inpatient rehabilitation and concluded her DUI criminal case in El Dorado County, CA. We agreed the boys' move was permanent, and that Warneck would relocate back to Las Vegas, and we would return to a more equal custody arrangement.

During the 2018-2019 school year, Warneck figured out that the Santa Clara County, CA family case was not dismissed as we agreed. On 5/17/19, she entered into a summertime visitation agreement with me under false pretenses, knowing I would not let the boys out of Nevada without it. She was to return the children on 7/7/19.

On 7/7/19, she did not return our boys. Instead, California family lawyer Tristan Aeschleman emailed me, introduced himself, confirmed he was aware of my

agreements with Warneck, and tried to blackmail me. He threatened that if I did not change my agreements, I would not see my children again until ordered by a court.

I immediately filed a family law action in Clark County, NV, and motioned for an emergency pick up order. Warneck answered the lawsuit, and claimed Nevada lacked jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), because there was a judgment on file in the California court. We had a hearing on 7/31/19 for my motion, at which Warneck admitted to having an apartment in Las Vegas and that she registered to vote there. Nevertheless, the Nevada family judge ordered a jurisdictional conference with Santa Clara, CA to determine whether Nevada could exercise jurisdiction. 2-ER-280-282.

The conference was on 8/7/19. 2-ER-215-233. At that time, the only court to have jurisdiction over me, was the Nevada court. The day prior, Aeschleman filed a declaration into the California court case. Aeschleman swore to facts he had no personal first-hand knowledge of[1]. 2-ER-239-253. At that time, there were no noticed motions before that court, and there had been no activity in that case since 2012. 2-ER-235. In fact, Aeschleman had filed motions in July 2019, but then asked for multiple continuances after falsely swearing to that court that he couldn't serve me, even though he knew I would be standing next to Warneck's lawyer on 7/31/19 and 8/7/19 in the Nevada courtroom[2]. 2-ER-235, 282-283.

---

[1] See California Rules of Professional Conduct 3.1, 3.2, 3.3, 3.4, and 3.7

[2] Id.

At the conference, California judge Roberta Hayashi, admitted to reading Aeschleman's declaration, and fiercely advocated for Warneck and for retaining jurisdiction in Santa Clara, where neither the parties nor the children lived[3]. 2-ER-216-217, 219-221. At first the Nevada judge fought back, but then gave up when Hayashi started asserting the legitimacy of the so-called 2012 stipulated judgment, and my failure to vacate it. 2-ER-228. When my Las Vegas lawyer asked Hayashi to give me a chance to file a response to the ex parte declarations she read, she explicitly refused[4]. 2-ER-231.

On 8/21/19, Aeschleman sent an ex parte letter to Hayashi with a proposed Finding and Order After Hearing. The proposed order contained findings of fact and conclusions of law notwithstanding that there had been no noticed motions or hearings in California. I and my newly hired California attorney both asked Aeschleman to retract the order, and he ignored us. Hayashi made edits to the order, and then signed it on 9/27/19. She filed it on 10/1/19[5]. 2-ER-257-271.

Prior to Hayashi signing the order, we had a hearing on my motion for the court to cede jurisdiction back to Nevada. The motion was filed as an emergency ex parte. Hayashi issued an order shortening time. I specially appeared in person on 9/18/19. Hayashi called Aeschleman's inability to serve me his July 2019 motions

---

[3] See California Code of Judicial Ethics Cannons 1, 2, and 3

[4] Id.

[5] See footnotes 2 and 3

"ludicrous." She ordered a brief focused assessment ("BFA") to gather evidence and address the inconvenient forum factors of my jurisdictional challenge under the UCCJEA[6]. She asked Warneck and I to attend mediation to reach a temporary agreement on custody pending the outcome of the BFA and my jurisdictional challenge. Warneck and I made a temporary agreement. However, Hayashi later signed the ex parte jurisdictional order Aeschleman sent her, which I had no idea she was considering, and changed the BFA to a full-blown custody evaluation without notice to me and without my consent. In other words, Hayashi completely ignored my jurisdictional challenge and the issues I raised, which was the only noticed motion before her, signed the secret ex parte order for a non-existent hearing, and then put the case on a procedural path as if she had jurisdiction. 2-ER-284-285.

From 10/1/19 to 12/12/23, I have been subjected to several more ex parte frauds, including Aeschleman failing to disclose to California judges Hendrickson, Blecher, and KuhnIe what he and Hayashi had done to get the Santa Clara court to exercise jurisdiction over me and my children. Once I even caught Aeschleman serving a different version of an ex parte than what he filed with the court. 2-ER-347-350. He has repeatedly lied in ex parte declarations and abused the process to deny me a fair opportunity to defend my rights and my access to my children.

---

[6] See California Family Code 3427

Hendrickson, Kuhnle, and Blecher refused to allow me to prosecute contempt, and my complaints to the presiding judge went nowhere. 2-ER-285-297.

On 8/24/21, Kuhnle granted Warneck and Aeschleman's ex parte request, stripping me of all legal and physical custody of my children in violation of the notice requirements[7]. On 8/26/21, El Dorado County, CA District Attorney Investigator Rich Horn opened a criminal investigation into me for violating the secret court orders. His investigative reports failed to mention my extensive contact with him from 2019 to 2021, in which I reported to him Warneck and Aeschleman's original abduction of my children from Nevada in 2019. They also did not mention the volumes of evidence I provided to him that I was being denied due process and that Warneck and Aeschleman were defrauding the Santa Clara court. His reports do not mention that on 9/3/21, I emailed him and his chain of command a California Penal Code 278.7 notice. On 9/24/21, El Dorado DA Brittany Griffith went to a California judge and applied for a warrant for my arrest and did not disclose to the judge the mounds of exculpatory evidence in her possession. 2-ER-290-293.

On 9/29/21, Nevada Attorney General agents Dave Monroe and Gina Lovero orchestrated my arrest on the California warrant they knew had been obtained by fraud[8]. The arrest was pre-planned and coordinated with Warneck and Aeschleman.

[7] See California Rule of Court 5.165 and Santa Clara County Local Rule 5(A)(2)(b)

[8] Nevada law enforcement has been unable to produce a single document under the Nevada Public Records Act demonstrating that California warrants have any legal effect in NV.

My kids were immediately handed off to Warneck in Las Vegas, she took them to California, and I was incarcerated in the Clark County, NV detention center. I was imprisoned for two weeks in violation of Nevada's bail laws, because Clark County, NV District Attorney Caroline Morales filed a false sworn criminal complaint against me claiming I fled from justice from the State of California. And Judge Eric Goodman refused to grant me bail. After two weeks, Goodman finally capitulated. 2-ER-293-294.

The Santa Clara County Superior Court has never stopped violating my due process rights. On 5/3/22, Hendrickson sua sponte labeled me a vexatious litigant without notice or opportunity to be heard. On 10/6/23, she rescinded this order for unknown reasons, and admitted she denied me due process. 2-ER-358. I suspect this occurred, because I sent a sworn declaration, with evidence, to the chief judge of the California 6th District Court of Appeals. The declaration detailed the due process abuses. I sent the declaration to request permission to appeal the vexatious litigant order, but have been unable to litigate any appeal, because the Santa Clara court is holding my court file hostage, and I can't build a record for appeal. Hendrickson swiftly repeated the due process violation and relabeled me a vexatious litigant. 2-ER-364-382. That order remains unchallenged until I can get a federal court to do something about protecting my rights.

On 9/20/23, I filed a federal civil rights lawsuit in Nevada for my false arrest against the Nevada Attorney General agents, Warneck, Aeschleman, Caroline

Morales, her boss Steve Wolfson, and several individuals at the El Dorado County, CA DA's office.

On 12/7/23, I filed another federal lawsuit seeking relief declaring unconstitutional the pattern and practice of due process violations occurring in the California judiciary. The cases were consolidated on 1/29/24. Thereafter, the California judiciary defendants were dismissed for lack of personal jurisdiction. On 7/16/24, I filed a civil rights lawsuit against the California judges in the U.S. District Court - Northern District of California (Case No. 3:24-cv-04271-AMO). That case has not yet been served. The district judge granted me extensions while we waited for orders from the district court of Nevada, and so that I may prosecute this appeal.

On 5/20/24, I filed identical motions in the Nevada federal case, because local rules require one docket entry per relief sought. The motions asked for partial summary judgment, a declaratory judgment, and a preliminary injunction. 2-ER-112,192. On 5/28/24, I field a third motion to include enjoining Steve Wolfson, because I inadvertently left him off the prior motions. 2-ER-105. The motions argued that Hayashi's 2019 ex parte jurisdictional order was void on its face, could be collaterally attacked at any time, and asked the district court to enjoin Nevada officials from enforcing the order or any order stemming from it. And although I did not specifically argue extrinsic fraud, I certainly alleged facts, which would

have allowed the court to reasonable infer I was complaining about it. My goal was to prevent another false arrest.

On 11/14/24, the district court denied my Motion for Preliminary Injunction claiming my requests are barred by the Rooker-Feldman doctrine. 1-ER-5. The court used the same argument to partially grant some Motions to Dismiss. 1-ER-12-15, 37-41, 58-62. This appeal follows.

## SUMMARY OF THE ARGUMENT

The Rooker-Feldman doctrine had its genesis in two U.S. Supreme Court cases - *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The core of the doctrine is that state court litigants must seek appeals of final judgments with the U.S. Supreme Court if no relief was obtained in the state's highest court[9]. It does not prohibit parallel state and federal litigation. The doctrine prohibits U.S. district courts from hearing de facto appeals by state court litigants unhappy with an outcome in state courts that had proper jurisdiction to adjudicate a dispute. Jurisdiction over the parties is the most basic premise of the doctrine, and in fact it was discussed in the Rooker case, "It affirmatively appears from the bill that the judgment was rendered in a cause wherein the circuit court had jurisdiction of both the subject-matter and the parties, that a full hearing was had therein, that the judgment was responsive to the issues,

---

[9] See 28 U.S.C. § 1257

and that it was affirmed by the Supreme Court of the state on an appeal by the plaintiffs." (See *Rooker* at 415). My Motion for Preliminary Injunction demonstrated clearly that Hayashi and the Santa Clara Court had no personal jurisdiction over me - its own docket sheet shows there were no noticed motions and that I had not been served with one. Furthermore, Hayashi announced on the record in the Nevada court (which did have jurisdiction) that she would not allow me an opportunity to be heard on ex parte declarations sent to her by Aeschleman. This is the opposite of the "full hearing" mentioned by the Supreme Court in *Rooker*. Should the Ninth Circuit allow the preliminary injunction denial to stand, it would be mean that a California attorney can file a sworn declaration of facts for which he has no personal first-hand knowledge, in a state court for which there are no noticed motions or hearings, in a state wherein the opposing party does not live, and a California judge may read the declaration and make findings of fact and conclusions of law in a proposed order sent to her in the mail by the attorney.

## STANDARD OF REVIEW

This court reviews Article III justiciability and applications of the Rooker-Feldman doctrine de novo. *Bell v. City of Boise*, 709 F.3d 890, 896 (2013). This court reviews the denial of a preliminary injunction for abuse of discretion; however, the district court's interpretation of the underlying legal principles is

subject to de novo review. *California Chamber of Commerce v. Council for Education and...*, 29 F.4th 468 (2022).

## ARGUMENT

**I. State court order void on its face, does not deprive a U.S. district court of jurisdiction under Rooker-Feldman. The district court has federal question and supplemental jurisdiction.**

The foundation of the Rooker-Feldman doctrine, is that a state court had jurisdiction over the subject matter and the parties prior to issuing a final judgment. The U.S. Supreme Court discussed this in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415 (1923), and recognized that they had done so in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005).

Under California law, failure to serve notice of a motion is the equivalent of failure to serve summons and complaint, which renders a judgment void on its face. *In re Marriage of Kreiss*, 224 Cal.App.3d 1033, 1039 (1990). It is well settled in California that a judgment or order which is void on its face, and which requires only an inspection of the record to show its invalidity, may be attacked anywhere at any time. It is a nullity. *Nagel v. P & M Distributors, Inc.*, 273 Cal.App.2d 176, 179 (1969).

A summons and complaint are not at issue in this appeal; those were filed in 2012, and I do not contest those. I do, however, contest the 2012 so-called stipulated judgement, which was entered in the court through extrinsic fraud. But

15

that is also not a subject of this appeal. Nor is a notice of motion. Because there was no motion. There was nothing before the California court, and there was no hearing. Hayashi and Aeschleman simply got together through the mail to collude to deprive me of my federally protected right to due process, in the form of issuing an order which made findings of fact and conclusions of law, and deprived me of the opportunity to defend my interests (and those of my children). They then built an entire pyramid of void orders, also issued without notice or opportunity to be heard, on top of their ex parte jurisdictional fraud.

I have found no case that stands for the proposition that Rooker-Feldman bars a U.S. district court from subject-matter jurisdiction to adjudicate my collateral attack under the 14th Amendment. I have invoked the court's federal question jurisdiction on this and many other issues. It is obligated under Article III to adjudicate my case. Furthermore, the district court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Hayashi's secret court order cannot stand under California state law.

The district court sua sponte raised Rooker-Feldman and erred when it articulated my collateral attack as invoking FRCP 60(b) as the authority for requesting the preliminary injunction and/or the declaratory judgement. I mentioned FRCP 60(b) only once in passing, and also cited California Civil Procedure 473(d). The purpose of mentioning the rules was solely to put the court on notice that both the state and federal judiciaries recognize a process by which to vacate void orders and

judgments. The district court did not explain why it laser focused on the FRCP citation, when it could have just as easily focused on my state civil procedure citation, because the district court has supplemental jurisdiction.

Ironically, the first case cited by the district court in its order denying my preliminary injunction, specifically discussed the void *ab initio* exception to Rooker-Feldman. *In re Reyes*, No. BAP EC-18-1229-BSL, 2019 WL 1759749, at *5 and *6 (B.A.P. 9th Cir. Apr. 19, 2019). 1-ER-3. A state court judgement is subject to collateral attack in federal court if the state court lacked jurisdiction over the parties. *Id.* (citing *In re Lake*, 202 B.R. 751, 758 (1996)).

The Due Process Clause of the Fourteenth Amendment demands that I be given adequate notice of claims against me, and a fair chance to litigate them. A California judgement or order issued against me, a Nevada citizen living in Nevada, in violation of due process is void and not entitled to full faith and credit. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). 42 U.S.C. § 1983 provides for equitable relief and 28 U.S.C. § 2201 creates the remedy of declaratory relief. Both statutes were invoked in the complaint, as was the 14th Amendment. The 14th Amendment was repeatedly invoked throughout the Motion for Preliminary Injunction, 2-ER-107, 197. 42 U.S.C. § 1983 was cited, and 28 U.S.C. 2201 was invoked throughout the motions by way of FRCP 57. The court erred when it asserted that I relied on FRCP 60(b) as the authority, and when it raised Rooker-Feldman.

## II.   The order is interlocutory and not barred by Rooker-Feldman.

Even if it were not void on its face, the 2019 ex parte jurisdictional order issued without notice or opportunity to be heard, is an interlocutory order. There has been no trial at the Santa Clara Superior Court despite my repeated demands for one. I have had almost no discovery for six years. The court has refused to allow me to call witnesses or to cross-examine the opposing party at request for order hearings[10]. In *Exxon*, the U.S. Supreme Court made clear that Rooker-Feldman "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by final state-court judgements rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." (*Exxon* at 284 ). I am not a state-court loser, because I have never had a trial. The federal questions under the 14th Amendment due process clause have never been addressed by the state court and remain unanswered. *Mothershed v. Justices of Supreme Court*, 410 F.3d 602, 604 n. 1 (2005).

## III.   If not interlocutory, extrinsic fraud.

---

[10] See California Rules of Court 5.113. I have transcripts of all of these hearings, because I do not dare go into California's corrupt courts without a court reporter at great personal cost to me. The Santa Clara Court is currently being sued by two non-profits in the California Supreme Court for its failure to provide court reporters or recordings while prohibiting litigants from recording. The transcripts show my repeated objections to lack of notice and opportunity to be heard, to Aeschleman's fraudulent filings, and to his filing different versions of motions than what he served on me. These issues are a subject of my federal litigation.

Even if the ex parte jurisdictional order were not void on its face, and even if Rooker-Feldman does bar federal review of state interlocutory orders, the doctrine does not apply in cases of extrinsic fraud upon the state court. *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1141 (2004). The district court is well aware of this concept and this case, because it cited it in an order on a Motion to Dismiss. 1-ER-37, 58. It is not clear why the district court would acknowledge that it has jurisdiction to enjoin a state court judgement when extrinsic fraud is at issue, but claim to be jurisdictionally barred to hear a collateral attack when a state court's own records show I was given no notice, no opportunity to be heard, and that there was nothing even on the state court docket.

The district court raised Rooker-Feldman sua sponte. In doing so, it ambushed me, after making me wait six months to get a ruling on my requested relief for ongoing constitutional rights violations, namely my 14th Amendment liberty interest in the care custody and control of my children. *Hardwick v. County of Orange*, 844 F.3d 1112, 1116 (2017). Under the circumstances, it should have exercised appropriate care to allow me the opportunity to raise the issue of extrinsic fraud explicitly, or alternatively, to recognize that I raised it implicitly. Specifically, I alleged that Aeschleman filed a sworn declaration in the California court to assert facts for which he had no personal first-hand knowledge, and that declaration was never served on me. The California court then relied on that ex

parte declaration to make findings of fact and conclusions of law and I was given no opportunity to rebut it.

## IV. Regardless, third party restraint.

Even if the ex parte jurisdictional order issued without notice and opportunity to be heard, without an official proceeding, through the mail, is considered by the federal judiciary to be a valid final state court judgement, and thus blocked from collateral attack by Rooker-Feldman, the doctrine does not deprive the district court of subject-matter jurisdiction to enjoin Clark County, NV DA Wolfson and Nevada Attorney General Aaron Ford from falsely arresting me and initiating fraudulent criminal actions in a Nevada court. Wolfson and Ford are not parties to the California family law case, and even if I expressly seek to set aside a state court judgment, Rooker-Feldman does not apply, because I am clearly seeking relief separate and apart from "legal error" by the California court. *Maldonado v. Harris*, 370 F.3d 945, 950 (2004). As mentioned above, there is the issue of Aeschleman and Warneck's extrinsic fraud. But I am also challenging the proposition that a California warrant has any authority in Nevada, and also the constitutionality, as applied, and facially, of the Nevada Revised Statute 179.209. 2-ER-276. My Motions for Preliminary Injunction clearly asserted that Wolfson and Ford used, and are still using, the 2019 California ex parte jurisdictional order, and other void

California orders, to violate my 1st, 4th, and 14th Amendment rights. 2-ER-108-110, 198-199.

## V. The Motions to Dismiss

The district court threaded its misplaced views on Rooker-Feldman throughout several orders partially granting Motions to Dismiss. 1-ER-14-16, 39-40, 60-61. Although in a few cases the district court granted leave to amend the complaint, amending will be futile, unless the Ninth Circuit clearly outlines the contours of Rooker-Feldman.

At 1-ER-39-40 and 60-61, the district court cited *Doe & Associates Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (2001) and *Benavidez v. County of San Diego*, 993 F.3d 1134, 1142 (2021) to argue that Rooker-Feldman applies to interlocutory orders. Doe was decided prior to Exxon, and regardless, the interlocutory orders all have the same defects mentioned above. Just because I allege that judicial officers participated in some of the constitutional rights violations, it does not change the fact that I was repeatedly prevented from fully and fairly litigating. Furthermore, it should be obvious that I cannot raise federal due process questions to state judges when judges and lawyers are having ex parte get togethers in the mail without any noticed motions or judicial processes.

At 1-ER-14-16, the district court erroneously concluded that I cannot challenge a Nevada arrest based on a California warrant, if such a challenge would undue a plea. First, let me state plainly, that my plea was coerced by the El Dorado County

District Attorney's office after they kidnapped my kids from Nevada by lying to a California judge and duping incompetent Nevada Attorney General agents into falsely arresting me. Needless to say, that once California had my kids again, the corrupt Santa Clara County family judges refused, and still refuse, to grant me any trial on the merits, discovery, or temporary orders granting me my constitutional right to the care, custody, and control of children.

Now putting that to the side, whether I pled or not is irrelevant. California warrants have no lawful authority in Nevada. How exactly does Rooker-Feldman deprive a federal district court of subject-matter jurisdiction for false arrest under these circumstances? The Nevada Attorney General agents should have gone to a Nevada judge to get a warrant. Under Nevada Revised Statute 179.205, there is authority for arrest without a warrant, provided that such an arrest ia predicated on "reasonable information." If the Nevada Attorney General agents knew the California warrant was obtained by fraud, I contend that that is not reasonable. Nevertheless, I will be seeking to amend my complaint to challenge the statute as unconstitutional.

The district court also erred by dismissing my false arrest claim with prejudice on the grounds that it would undue the proceedings in Nevada. This is nonsensical. This lawsuit is proceeding against Las Vegas judge Eric Goodman for declaratory relief for his deprivation of my constitutional rights. Furthermore, the only final order to come out of the Nevada criminal court was an order of dismissal. It was an

extradition case. How would Rooker-Feldman block a false arrest claim when the Nevada court never convicted me of anything, had a preliminary hearing, litigating anything, and simply kept me imprisoned until I posted bail, which it forwarded to California?

## NINTH CIRCUIT CAMERA POLICY

I want to sincerely thank the Ninth Circuit for its camera in the courtroom policy. I run the YouTube channel @FatherinExile. I regularly go into the Ninth Circuit archives to find immunity cases. I then publish those cases with links to supporting documents, the written decision, and news. These videos are immensely popular. Videos with only a few hundred views in the archives are getting hundreds of thousands of views on my channel. The citizenry is starving for information about immunity, and the comments sections of my videos are full of thanks of people telling me how much they have learned from oral arguments and written decisions I link to. All courts should have cameras.

## JUDICIAL AND PROFESSIONAL MISCONDUCT

This case contains evidence of Aeschleman's professional misconduct and Hayashi's judicial misconduct. I request that the Ninth Circuit publicly refer these individuals to appropriate authorities. I have tried for years to get the State Bar of California and the California Commission on Judicial Performance to do basic

investigations, but they are completely inept and corrupt[11] and they refuse to[12].

Perhaps a prod from the Ninth Circuit will initiate an actual investigation.

## CONCLUSION

This court should find that the district improperly invoked the Rooker-Feldman doctrine. It should order the injunction or remand with instructions to order the injunction. On the issue of extrinsic fraud, the district court should be instructed to address the evidence in the motion. This court should fully outline the contours of Rooker-Feldman as relates to issues raised in this brief, so that I may amend my complaint without fear of the district expanding Rooker-Feldman beyond the confines of the kinds of cases from which it acquired its name.

Date:  December 27, 2024

*/s/ Michael C. Sternberg*
Michael C. Sternberg, Pro se

---

[11]Weak Policies Limit Its Ability to Protect the Public From Attorney Misconduct: https://information.auditor.ca.gov/reports/2022-030/index.html

[12] Corrupt California Bar Exposed! 😳 The Crime-Fraud Exception (2023): https://youtu.be/vvX_1BFH7D8?si=f-oLI-rbjPGoEdPO

## STATEMENT OF RELATED CASES

I am not aware of any related cases. See Circuit Rule 28-2.6.

## CERTIFICATE OF COMPLIANCE

I certify this entire brief, including exempted sections, contains less than 11,000 words, thereby complying with Cir. R. 32-1.

December 27, 2024.

By: s/ *Michael C. Sternberg*

**ADDENDUM**

**ADDENDUM INDEX FOLLOWS**

# INDEX TO ADDENDUM

U.S. Const. art. III.................................................................................B

U.S. Cont. amend. XIV, § 1 ...............................................................C

Nevada Revised Statute 125A (UCCJEA)..........................................C

California Family Code 3427 (UCCJEA) ............................................D

California Code of Civil Procedure 473(d)..........................................F

28 U.S.C. § 1257...................................................................................F

28 U.S.C. § 1292(a)(1)..........................................................................F

28 U.S.C. § 1331.................................................................................G

28 U.S.C. § 1343.................................................................................G

28 U.S.C. § 1367.................................................................................G

28 U.S.C. § 2201...................................................................................I

42 U.S.C. § 1983...................................................................................I

California Rule of Court 5.113.............................................................I

California Rule of Court 5.165............................................................K

Santa Clara County Local Family Rule of Court 5(A)(2)(B) ..................L

## U.S. CONST. ART. III

### Section 1

The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office.

### Section 2

The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—to all Cases affecting Ambassadors, other public Ministers and Consuls;—to all Cases of admiralty and maritime Jurisdiction;—to Controversies to which the United States shall be a Party;—to Controversies between two or more States;—between a State and Citizens of another State,—between Citizens of different States,—between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.

In all Cases affecting Ambassadors, other public Ministers and Consuls, and those in which a State shall be Party, the supreme Court shall have original Jurisdiction. In all the other Cases before mentioned, the supreme Court shall have appellate Jurisdiction, both as to Law and Fact, with such Exceptions, and under such Regulations as the Congress shall make.

The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed.

### Section 3

Treason against the United States, shall consist only in levying War against them, or in adhering to their Enemies, giving them Aid and Comfort. No Person shall be convicted of Treason unless on the Testimony of two Witnesses to the same overt Act, or on Confession in open Court.

The Congress shall have Power to declare the Punishment of Treason, but no Attainder of Treason shall work Corruption of Blood, or Forfeiture except during the Life of the Person attainted.

## U.S. CONT. AMEND. XIV, § 1

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

## NEVADA REVISED STATUTE 125A (UCCJEA)

1. A court of this state which has jurisdiction pursuant to the provisions of this chapter to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. The issue of inconvenient forum may be raised upon motion of a party, the court's own motion or request of another court.

2. Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:

(a) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

(b) The length of time the child has resided outside this state;

(c) The distance between the court in this state and the court in the state that would assume jurisdiction;

(d) The relative financial circumstances of the parties;

(e) Any agreement of the parties as to which state should assume jurisdiction;

(f) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

(g) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

C

(h)  The familiarity of the court of each state with the facts and issues in the pending litigation.

3.  If a court of this state determines that it is an inconvenient forum and that a court of another state is a more appropriate forum, it shall stay the proceedings upon condition that a child custody proceeding be promptly commenced in another designated state and may impose any other condition the court considers just and proper.

4.  A court of this state may decline to exercise its jurisdiction pursuant to the provisions of this chapter if a child custody determination is incidental to an action for divorce or another proceeding while still retaining jurisdiction over the divorce or other proceeding.

(Added to NRS by 2003, 997)

### CALIFORNIA FAMILY CODE 3427 (UCCJEA)

(a) A court of this state that has jurisdiction under this part to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. The issue of inconvenient forum may be raised upon motion of a party, the court's own motion, or request of another court.

(b) Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:

(1) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child.

(2) The length of time the child has resided outside this state.

(3) The distance between the court in this state and the court in the state that would assume jurisdiction.

(4) The degree of financial hardship to the parties in litigating in one forum over the other.

(5) Any agreement of the parties as to which state should assume jurisdiction.

D

(6) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child.

(7) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence.

(8) The familiarity of the court of each state with the facts and issues in the pending litigation.

(c) If a court of this state determines that it is an inconvenient forum and that a court of another state is a more appropriate forum, it shall stay the proceedings upon condition that a child custody proceeding be promptly commenced in another designated state and may impose any other condition the court considers just and proper.

(d) A court of this state may decline to exercise its jurisdiction under this part if a child custody determination is incidental to an action for dissolution of marriage or another proceeding while still retaining jurisdiction over the dissolution of marriage or other proceeding.

(e) If it appears to the court that it is clearly an inappropriate forum, the court may require the party who commenced the proceeding to pay, in addition to the costs of the proceeding in this state, necessary travel and other expenses, including attorney's fees, incurred by the other parties or their witnesses. Payment is to be made to the clerk of the court for remittance to the proper party.

(f) (1) In a case where the provision of gender-affirming health care or gender-affirming mental health care to the child is at issue, a court of this state shall not determine that it is an inconvenient forum where the law or policy of the other state that may take jurisdiction limits the ability of a parent to obtain gender-affirming health care or gender-affirming mental health care for their child.

(2) For the purposes of this section, "gender-affirming health care" and "gender-affirming mental health care" have the same meaning as defined by Section 16010.2 of the Welfare and Institutions Code.

*(Amended by Stats. 2022, Ch. 810, Sec. 6. (SB 107) Effective January 1, 2023.)*

E

## CALIFORNIA CODE OF CIVIL PROCEDURE 473(D)

(d) The court may, upon motion of the injured party, or its own motion, correct clerical mistakes in its judgment or orders as entered, so as to conform to the judgment or order directed, and may, on motion of either party after notice to the other party, set aside any void judgment or order.

*(Amended by Stats. 1996, Ch. 60, Sec. 1. Effective January 1, 1997.)*


## 28 U.S.C. § 1257

(a) Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States.

(b) For the purposes of this section, the term "highest court of a State" includes the District of Columbia Court of Appeals.


## 28 U.S.C. § 1292(A)(1)

(a) Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:

   (1) Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court;

F

**28 U.S.C. § 1331**

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

**28 U.S.C. § 1343**

(a)  The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

(1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;

(2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

(b) For purposes of this section—

(1) the District of Columbia shall be considered to be a State; and

(2) any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

**28 U.S.C. § 1367**

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original

G

jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

(d) The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

(e) As used in this section, the term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

H

**28 U.S.C. § 2201**

(a) In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(9) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

(b) For limitations on actions brought with respect to drug patents see section 505 or 512 of the Federal Food, Drug, and Cosmetic Act, or section 351 of the Public Health Service Act.

**42 U.S.C. § 1983**

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

**CALIFORNIA RULE OF COURT 5.113**

(a) Purpose

Under Family Code section 217, at a hearing on any request for order brought under the Family Code, absent a stipulation of the parties or a finding of

good cause under (b), the court must receive any live, competent, and admissible testimony that is relevant and within the scope of the hearing.

(b) Factors

In addition to the rules of evidence, a court must consider the following factors in making a finding of good cause to refuse to receive live testimony under Family Code section 217:

(1) Whether a substantive matter is at issue-such as child custody, visitation (parenting time), parentage, child support, spousal support, requests for restraining orders, or the characterization, division, or temporary use and control of the property or debt of the parties;

(2) Whether material facts are in controversy;

(3) Whether live testimony is necessary for the court to assess the credibility of the parties or other witnesses;

(4) The right of the parties to question anyone submitting reports or other information to the court;

(5) Whether a party offering testimony from a non-party has complied with Family Code section 217(c); and

(6) Any other factor that is just and equitable.

(c) Findings

If the court makes a finding of good cause to exclude live testimony, it must state its reasons on the record or in writing. The court is required to state only those factors on which the finding of good cause is based.

(d) Minor children

When receiving or excluding testimony from minor children, in addition to fulfilling the requirements of Evidence Code section 765, the court must follow the procedures in Family Code section 3042 and rule 5.250 of the California Rules of Court governing children's testimony.

(e) Witness lists

Witness lists required by Family Code section 217(c) must be served along with the request for order or responsive papers in the manner required for the service of those documents (Witness List (form FL-321) may be used for this purpose). If no witness list has been served, the court may require an offer of proof before allowing any nonparty witness to testify.

(f) Continuance

J

The court must consider whether or not a brief continuance is necessary to allow a
    litigant adequate opportunity to prepare for questioning any witness for the
    other parties. When a brief continuance is granted to allow time to prepare
    for questioning witnesses, the court should make appropriate temporary
    orders.

(g) Questioning by court
Whenever the court receives live testimony from a party or any witness it may
    elicit testimony by directing questions to the parties and other witnesses.

## CALIFORNIA RULE OF COURT 5.165

(a) Method of notice
Notice of appearance at a hearing to request emergency orders may be given
    personally or by telephone, voicemail, fax transmission, electronic means
    (if permitted), overnight mail, or other overnight carrier.
(Subd (a) amended effective July 1, 2020.)

(b) Notice to parties
A party seeking emergency orders under this chapter must give notice to all parties
    or their attorneys so that it is received no later than 10:00 a.m. on the court
    day before the matter is to be considered by the court. After providing
    notice, each party must be served with the documents requesting emergency
    orders as described in rule 5.167 or as required by local rule. This rule does
    not apply to a party seeking emergency orders under the Domestic Violence
    Prevention Act.

(1) Explanation for shorter notice
If a party provided notice of the request for emergency orders to all parties and
    their attorneys later than 10:00 a.m. the court day before the
    appearance, the party must request in a declaration regarding notice
    that the court approve the shortened notice. The party must provide
    facts in the declaration that show exceptional circumstances that
    justify the shorter notice.

(2) Explanation for waiver of notice (no notice)
A party may ask the court to waive notice to all parties and their attorneys of the
    request for emergency orders. To make the request, the party must
    file a written declaration signed under penalty of perjury that
    includes facts showing good cause not to give the notice. A judicial

K

officer may approve a waiver of notice for good cause, which may include that:

(A) Giving notice would frustrate the purpose of the order;

(B) Giving notice would result in immediate and irreparable harm to the applicant or the children who may be affected by the order sought;

(C) Giving notice would result in immediate and irreparable damage to or loss of property subject to disposition in the case;

(D) The parties agreed in advance that notice will not be necessary with respect to the matter that is the subject of the request for emergency orders; and

(E) The party made reasonable and good faith efforts to give notice to the other party, and further efforts to give notice would probably be futile or unduly burdensome.

(c) Notice to the court
The court may adopt a local rule requiring that the party provide additional notice to the court that he or she will be requesting emergency orders the next court day. The local rule must include a method by which the party may give notice to the court by telephone.

**SANTA CLARA COUNTY LOCAL FAMILY RULE OF COURT 5(A)(2)(B)**

All ex parte requests by attorneys must be submitted to the Court Specialist through e-filing with any filing fees due with the motion. All ex parte requests by self- represented litigants must be submitted to the Court Specialist by using the FJCC drop box or by e-filing with any filing fees due with the motion. The Court Specialist will hold all applications (except requests for domestic violence restraining orders, gun violence restraining orders, matters identified in Cal. Rules, Rule 5.170, or properly supported requests not to give notice) for 24 hours before submission to the judicial officer. Notice of the application must be given to the opposing attorney or self-represented party before 10:00 a.m. on the court day before the matter is to be considered by the court.

## CERTIFICATE OF SERVICE

I hereby certify that on December 27, 2024, I electronically filed the foregoing brief, with three volumes of Excerpts of Records, plus the index volume. At the time of filing, I realized that only attorney to sign up for electronic case filing in this case was Vivienne Rakowsy for Adames & Ash, LLP and Tristan Aeschleman. It is not clear why she registered as those defendants were not involved in the underlying preliminary injunction motion, and did not respond to the motion.

It is my understanding that attorneys must sign up for electronic case filing. My brief is due today, and I did not obtain prior permission to email the brief to appellees who have not registered for the electronic filing system. Nevertheless, I emailed a copy to: Brandon.Thompson@clarkcountydanv.gov, renee.albert@clarkcountyda.com, and Tawana.Thomas@clarkcountydanv.gov for Steve Wolfson.

I emailed a copy to: itodorova@ag.nv.gov, jbeesley@ag.nv.gov, MKWatkins@ag.nv.gov, mpizzariello@ag.nv.gov, and rcarreau@ag.nv.gov for Aaron Ford.

I emailed a copy to: rdg@randazza.com, mjr@randazza.com for Shelley Warneck, although I don't think she can file anything into this appeal, because she was not a target of the preliminary injunction motion.

I will follow up with the 9th Circuit clerk, and these attorneys on December 30, 2024, to see if there is any objection to service by email.

December 27, 2024

By: s/ *Michael C. Sternberg*

M